BROKAW et al. v. COLLETT.    (No. 6328.)

(Court of Civil Appeals of Texas. Austin. April 5, 1921.)

1. **Pleading** ⚖️214(1)—**Averments of petition considered true on demurrer.**

As against general demurrer, all the averments of the petition are to be considered as true.

2. **Equity** ⚖️62—**Courts of equity may depart from rules announced in law actions, when necessary for justice.**

Under the rule that courts of equity will depart from rigid rules of law when necessary for the ends of justice, a decision of the Supreme Court in a case at law will not be extended, so as to preclude the doing of justice.

3. **Principal and surety** ⚖️177—**Sureties on note could purchase it from payee and sue maker.**

Sureties on a promissory note for the accommodation of the maker could purchase the obligation executed by both of them from the payee bank and maintain a suit thereon against the maker and principal.

Appeal from Tom Green County Court; Chas. T. Paul, Judge.

Suit by Chas. Brokaw and others against A. F. Collett. Demurrer to petition sustained and action dismissed, and plaintiffs appeal. Reversed, and cause remanded.

Oscar Frink, of San Angelo, and H. S. Garrett, of Cisco, for appellants.

Blanks, Collins & Jackson, of San Angelo, for appellee.

KEY, C. J. Charles Brokaw, J. G. Staggs, H. W. Deborde, and Bascom Lynn brought this suit against A. F. Collett, and stated their cause of action as follows:

"That heretofore, to wit, on the 13th day of July, 1915, the defendant, A. F. Collett, for a valuable consideration had and received, duly made, executed, and delivered to the First National Bank of San Angelo, Tex., his certain promissory note for the sum of $400, dated July 13, 1915, payable on August 20, 1915, to the order of the First National Bank of San Angelo, Tex., at its banking house situated in San Angelo, Tex., with interest at the rate of 10 per cent. per annum from maturity until paid, and providing that failure to pay said note promptly at maturity shall add 10 per cent. to the amount thereof, principal and interest, as attorney's fees, if placed in the hands of an attorney for collection, which said note was duly delivered by the defendant to the said First National Bank of San Angelo, Tex., and defendant thereby became liable and bound to pay to said First National Bank and to any lawful holder of said note and promised to pay said bank or any lawful holder of said note the amount of said note in accordance with the face and tenor, effect, and reading thereof, including all principal and interest and attorney's fees due thereon.

"II. That your plaintiffs also executed said note as sureties thereon for the accommodation of the defendant.

"III. That thereafter, on September 4, 1915, your plaintiffs duly purchased and bought, for a valuable consideration paid, said note from the said First National Bank of San Angelo, Tex., the payee thereof, and which bank was then and there the lawful holder of said note, the said note at that time and no part thereof or interest thereon being paid, and said note was thereupon duly transferred and delivered to your plaintiffs by said bank by proper indorsement thereon, and your plaintiffs thereupon became and are the lawful holders and owners of said note, and became and are entitled to collect the same and enforce payment thereof according to the face and tenor thereof, and the defendant thereby became liable and bound to pay plaintiffs the full amount of said note, principal and interest, and attorney's fees in accordance with the face, tenor, effect, and reading thereof.

"IV. That said note is now past due and unpaid. That though often so requested to do defendant has wholly refused and still refuses to pay said note or any part thereof, and plaintiffs have been compelled to place the same in the hands of attorneys for collection, and have contracted and agreed to pay such attorneys the attorney's fees stipulated for in said note, the same being a reasonable attorney's fee, all to plaintiffs' damage in the sum of $400, with interest thereon at 10 per cent. per annum from August 20, 1915, and 10 per cent. of said principal and interest as attorney's fees.

"Wherefore, defendant having duly answered herein, the plaintiffs pray that on final hearing they have judgment for their debt $400, as the principal of said note, with interest thereon at 10 per cent. per annum from August 20, 1915, and 10 per cent. as attorney's fees on the principal and interest of said note, for costs of suit, and for such other and further relief, special and general, as they may be entitled to under the facts and as in duty bound will ever pray."

The trial court sustained a general demurrer to the petition, and, the plaintiffs having declined to amend, the suit was dismissed. The plaintiffs have appealed, and have assigned as error the action of the court in sustaining the general demurrer.

It will be noted that the plaintiffs did not allege the amount paid by them for the note, and do not seek to recover such amount. Their cause of action is based upon the note itself, together with allegations that they had purchased the same from the original payee.

In Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528, our Supreme Court held that when a surety or co-obligor pays off or discharges the debt his right to reimbursement or contribution rests upon an implied promise of the principal or co-obligor, and that he cannot maintain an ac-

tion upon the original note, or other written obligation.

In McCavick v. McBride, 189 S. W. 795, where the surety was compelled to pay the note, he took an assignment from the creditor, but the appellate court held that the case was similar to Faires v. Cockerell, supra, and that the surety's right of action was not based upon the written note, but upon an implied promise to pay, and was therefore barred by the two-year statute of limitation.

These two cases are relied on by counsel for appellee as sustaining the ruling of the trial court. Attention is called to the fact that in both of these cases the plaintiff's petition alleged that the plaintiff, as surety, had paid off and discharged the original debt, and it was held that when that result was accomplished no suit could be maintained upon the note, which was mere evidence of the existence of a debt which had been paid, and that the surety's cause of action was based upon an implied promise to reimburse the surety. In the case at bar the petition does not allege that the sureties had paid off and discharged the note, but it is alleged that they had bought it from the original payee, and that it had been assigned to them. They, in effect, concede that, if they are not entitled to maintain an action upon the note itself, their petition states no cause of action, and the general demurrer was properly sustained. But counsel in their behalf, in effect, assert the proposition that an accommodation surety may purchase and become the owner of the obligation which he has signed as surety, and maintain an action thereon against the principal; counsel for appellee controvert the soundness of that proposition; and that is the sole question involved in this case.

[1] In considering that question, it must be borne in mind that no controversy exists between the original payee and either the plaintiffs or the defendant in this case. As against a general demurrer, all of the averments in the petition are to be considered as true; and therefore we must deal with the case upon the assumption that the bank, the original payee, has no further interest in the note referred to, and, in so far as it could do so, assigned all of its rights therein to the sureties, who are the plaintiffs. The bank had the undoubted right to place the note upon the market and sell it to any one authorized to buy it; and for that reason can it be said that the plaintiffs could not purchase it, and thereby acquire all the rights that the bank had concerning it? There was no trust relation existing between the plaintiffs and the defendant; he had paid them nothing, and without any consideration whatever they had voluntarily become surety for him; and we fail to see wherein those facts can be held to furnish a reason for denying to them the right to purchase the note and maintain an action against the defendant thereon. It is true that when the bank, for a valuable consideration, assigned the note to the plaintiffs, it thereby relinquished all claim thereon, but that is a result which always follows when such an instrument is transferred from one person to another, and it does not prove that the debt itself has been paid.

In Lidderdale's Executors v. Executor of Robinson, 12 Wheat. 594, 6 L. Ed. 740, that court said:

"That a surety who discharges the debt of the principal, shall, in general, succeed to the rights of the creditor, as well direct as incidental, is strongly exemplified in those cases in which the surety is permitted to succeed to those rights, even against bail, who are themselves in many respects regarded as sureties. 2 Vern. 608; 11 Vesey, 22. That such would be the effect of an actual assignment made by the creditor to the surety, or to some third person for his benefit, no one can doubt. But, in the cases last cited, we find the court of equity lending its aid to compel the creditor to assign the cause of action, and thus *to make an actual substitution of the sureties, so as to perfect their claim at law. This fully affirms the right to succeed to the legal standing of their principal; and after establishing that principle, it is going but one step farther to consider that as done which the surety has a right to have done in his favor, and thus to sustain the substitution without an actual assignment."

In the petition under consideration, it is not alleged that the plaintiffs paid to the bank the full amount that was due on the note, and it may be that because of the supposed insolvency of the makers, or for some other satisfactory reason, the bank was willing to sell the note for less than its face value, and that the plaintiffs purchased and acquired title to it for a sum less than the entire debt referred to therein; and we can see no satisfactory reason why they could not do so. Their purchasing from the creditor the debt against the principal could work no injury to the latter. By the terms of the note, he had obligated himself to pay the amount therein specified, and it is immaterial to him whether such payment be made to the bank, the original payee, or to any other person who has acquired from the bank the right to collect the debt.

[2] While we accept the decision of the Supreme Court in Faires v. Cockerell as settling the question there presented for decision, yet, inasmuch as we have dispensed with common-law forms of action, and administer both law and equity in the same proceeding, we do not think the doctrine announced and applied in that case should be extended to include others which do not fall clearly within its scope. In fact, in that case the court recognized that for equitable reasons the doctrine there announced would not apply in some cases, and that, as the

surety who had paid the debt of his principal was subrogated to whatever securities the payee held, the surety would be subrogated to the rights of the payee as to such securities, and, if necessary to enforce such rights, to sue upon the original obligation. That doctrine rests upon the familiar principle that courts of equity will depart from rigid rules of law whenever it is necessary to accomplish the ends of justice.

[3] Keeping in view that wise and just rule of equity, and remembering the fact that an accommodation surety is under no obligation to his principal, while his principal is under obligation to him, we see no satisfactory reason for holding that the surety may not purchase the obligation executed by both of them, and maintain a suit thereon against the principal. Therefore we hold that the trial court committed error when it sustained the demurrer to the plaintiffs' petition; for which error, the judgment is reversed and the cause remanded.

Reversed and remanded.

BRADY, J. Although not prepared to dissent, I am unwilling, at this time, to give my concurrence in the above opinion and the conclusions announced therein. It is my desire to more maturely consider the question whether there is any real distinction between the purchase of a note by the surety from the payee and the payment of the obligation by him to the payee and the obtaining of a formal assignment of the paper.